UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Erika NUNEZ, et al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY, et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 22-cv-0625-AGS-SBC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (ECF 10)** |

In this automobile-defect case, defendant Ford Motor Company moves to dismiss the amended complaint on a variety of grounds.

## BACKGROUND

On May 20, 2018, defendant Ford warrantied the 2018 Ford Focus at issue. (ECF 9, at 3.) The warranty covers repairs for parts that malfunction due to a "manufacturing defect in factory-supplied materials or factory workmanship." (ECF 9-1, at 15.) From December 2019 to May 2022—while under warranty—plaintiffs Erika Nunez and Hector Garcia presented the vehicle to Ford's authorized repair facility at least six times for various concerns, including "engine," "transmission," and "electrical system" problems. (ECF 9, at 4–7; ECF 9-1, at 14.) Ford serviced the vehicle each time, once keeping it over two months. (ECF 9, at 7.) Yet after each repair the vehicle continued to "experience symptoms." (*Id*.)

Plaintiffs sued Ford under the Song-Beverly Consumer Warranty Act. (*See generally* ECF 1); *see* Cal. Civ. Code § 1790 *et seq*. In their amended complaint, plaintiffs allege that Ford violated its express warranties by: (1) failing to replace or repurchase the new vehicle when a covered defect was not remedied "after a reasonable number of [repair] attempts," Cal. Civ. Code § 1793.2(d); (2) failing to commence "service and repair . . . within a reasonable time" and failing to complete repairs of covered defects "within 30 days," *id*. § 1793.2(b); and (3) failing to make "sufficient service literature and replacement parts" available to its "authorized service and repair facilities . . . during the express warranty

1

period," *id*. § 1793.2(a)(3). (ECF 9, at 9–11.) In their fourth cause of action, plaintiffs charge that Ford breached its implied warranty of merchantability, Cal. Civ. Code §§ 1791.1, 1794, 1795.5. (ECF 9, at 11–12.) Ford moves to dismiss the amended complaint for multiple reasons. (ECF 10.)

## DISCUSSION

To survive a motion to dismiss, a complaint must contain enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 12(b)(6). In other words, it must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). "Naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678 (cleaned up).

### A.   Particularity Requirement for Automobile Defects

First, Ford moves to dismiss all four claims on the ground that no defect has been properly alleged. "[T]he level of detail required to allege an automobile defect is an unsettled question in the Ninth Circuit." *Fitzpatrick v. Ford Motor Co.*, No. 2:22-cv-01924-FWS-JPR, 2022 WL 17037498, at *5 (C.D. Cal. Nov. 15, 2022) (dismissing the same four claims for failing to adequately allege a vehicle defect). "Faced with divergent district court holdings, the Court looks to the general [particularity] guidance provided by the Ninth Circuit." *Zuehlsdorf v. FCA US LLC*, No. EDCV 18-1877 JGB (KKx), 2019 WL 2098352, at *6 (C.D. Cal. Apr. 30, 2019). That is, a complaint must contain "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," when those allegations "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

"In the context of product defect claims, district courts in the Ninth Circuit have often held that a complaint provides fair notice of the defect if it (1) identifies the particular part or system affected by the defect, and (2) describes the problems allegedly caused by the defect." *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1115 (C.D. Cal. 2021).

Plaintiffs need "not indicate how the alleged defect caused the reported symptoms" and "are not required to plead the mechanical details of an alleged defect in order to state a claim." *Id*. at 1116 (cleaned up).

The amended complaint does not appear to satisfy either of these notice requirements. For example, plaintiffs allege that the "engine," "transmission," and "electrical system" were defective. (ECF 9, at 4, 6–7.) But they don't specify the particular part or system at issue. The transmission, for example, is "composed of innumerable component parts and interrelated systems." *Browning v. Am. Honda Motor Co., Inc.*, 549 F. Supp. 3d 996, 1006 (N.D. Cal. 2021). Unless a plaintiff alleges more about "why the symptoms occur or what parts within the [t]ransmission are affected," defendant would be "open to potentially endless discovery regarding each of these parts and systems." *Id*. at 1006–07. Similarly, plaintiff describes the problems caused by the defect abstractly as "concerns" or "symptoms," which offers little guidance about the type or severity of automotive issues. (*See* ECF 9, at 6–7.)

Courts within this Circuit have dismissed claims for failing to adequately allege an automobile defect under similar circumstances. *See Fitzpatrick*, 2022 WL 17037498, at *6 (dismissing for inadequately alleging a defect when plaintiff claimed the vehicle had "electricals, brakes, cooling system and/or engine, and/or transmission" defects that continued to "experience symptoms" after the repairs); *Browning*, 549 F. Supp. 3d at 1001 (dismissing for inadequately alleging a defect when plaintiffs claimed the "transmission" had "design defects" that caused it to have "rough, delayed, or sudden shifting," "grinding or other loud noises during shifting," and "sudden loss of power"); *Pelayo v. Hyundai Motor Am., Inc.*, No. 8:20-cv-01503-JLS-ADS, 2021 WL 1808628, at *1, *4–5 (C.D. Cal. May 5, 2021) (dismissing for inadequately alleging a defect when plaintiffs claimed the "engine" failed to meet "design specifications" that caused it to have "sudden stalling, excessive oil consumption, and premature engine failure").

By contrast, district courts have found an automobile defect sufficiently alleged when the complaint contained more specific allegations about the particular defect and the

problems it caused. *See Williams v. Tesla, Inc.*, 20-cv-08208-HSG, 2021 WL 2531177, at *1, *3 (N.D. Cal. June 21, 2021) (denying motion to dismiss when complaint alleged that the vehicle suffered from "a defect in the front and rear suspension control arm assembly, causing the components of the suspension system to prematurely loosen, wear, crack, or break" that "manifests in one or more of the front upper and lower control arms, front suspension aft-link, front suspension fore-link, rear suspension upper link assembly, and rear suspension lower control arm assembly"); *Zuehlsdorf*, 2019 WL 2098352, at *6, *11 (denying motion to dismiss when complaint alleged that the vehicle "contained defective Jatco JF011E CVTs [Continuously Variable Transmissions] and that the defect caused a number of symptoms, including sudden shaking and jerking, failure to accelerate, overheating, abrupt deceleration, and transmission failure").

In short, each of plaintiffs' claims fails to adequately allege an automobile defect. Although this issue alone requires the complaint to be dismissed in its entirety, *see Fitzpatrick*, 2022 WL 17037498, at *4, the Court will briefly address Ford's other theories for dismissal.

### B. The Express Warranty

Plaintiffs' failure to specify the alleged defects has a cascading effect on Ford's express-warranty theories for dismissal. For instance, claim 1 must be dismissed because Ford does not have notice of how many times the car was presented for repair of the same defect. *See Brownfield v. Jaguar Land Rover N. Am., LLC*, 584 F. App'x 874, 875 (9th Cir. 2014) (holding that section 1793.2(d) only offers relief if the car was presented "for the repair of that particular problem on more than one occasion"). Similarly, claims 1 to 3 must be dismissed because it is impossible to know whether the unspecified defects involved materials or workmanship—which are covered by the express warranty—or a design defect, which is not. *See Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 668 (9th Cir. 2013) ("In California, express warranties covering defects in materials and workmanship exclude defects in design."); *cf. Clark v. LG Elecs. U.S.A., Inc.*, No. 13-cv-485-JM-JMA, 2013 WL 5816410, at *8 (S.D. Cal. Oct. 29, 2013) (dismissing express-warranty claims

when "factual allegations" suggested "an overall design defect rather than a [covered] problem with materials or workmanship").[1]

### C. The Implied Warranty

According to Ford, the implied-warranty cause of action (claim 4) has a fatal deficiency: Plaintiffs failed to allege that the vehicle was presented for repair within the "one-year implied warranty period."[2] (ECF 10-1, at 21–22.) The implied warranty lasts no "more than one year following the sale of new consumer goods to a retail buyer." Cal. Civ. Code § 1791.1(c). The Ford Focus, however, was first presented for repair over a year and

---

[1] The Court disagrees with Ford's contention that the express-warranty claims must be dismissed because plaintiffs have not adequately alleged "substantial impairment" to their vehicle. (*See* ECF 10-1, at 19.) Plaintiffs assert that their vehicle was once in the repair shop for over two months and that its value is now "worthless and/or de minim[i]s." (ECF 9, at 4, 7.) This plausibly alleges substantial impairment. *See Watson v. CarMax Auto Superstores W. Coast, Inc.*, No. 2:16-cv-09006-SVW (PJW), 2017 WL 3081824, at *2 (C.D. Cal. May 4, 2017) (holding that an express-warranty claim of substantial impairment was adequately pleaded based partly on allegations that the "vehicle was in the shop for [an] approximately three month period" and that the "Kelly Bluebook value of the car is significantly less when evaluated with the host of problems the vehicle has"). This argument does not justify dismissal.

[2] Ford also argues that plaintiffs failed to properly plead that the vehicle was "not fit for its intended purpose." (ECF 10-1, at 20–21.) The "basic inquiry" for a car's merchantability "is whether the vehicle was fit for driving." *McGee v. Mercedes-Benz USA, LLC*, 612 F. Supp. 3d 1051, 1060 (S.D. Cal. 2020); *see also In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 946 (N.D. Cal. 2018) ("Reliability, operability, and substantial freedom from defects related thereto are independent grounds for demonstrating unmerchantability."). As plaintiffs assert that the car was taken in for repair at least six times, including once for over two months (ECF 9, at 6–7), they have plausibly alleged that it was not reliably fit for driving. *See MyFord*, 291 F. Supp. 3d at 946 (noting that "situations where a defect's symptoms were persistent and could not be addressed through repair or replacement of an isolated component" can satisfy unmerchantability); *cf. Treuhaft v. Mercedes-Benz USA, LLC*, No. 2:20-cv-11155-SVW-GJS, 2021 WL 2864877, at *3 (C.D. Cal. July 6, 2021) (finding that a vehicle "taken in for repairs eight times in a two-year period" was still merchantable because, unlike here, the vehicle was promptly "restored to working order").

a half after purchase—well beyond the implied-warranty period. (*See* ECF 9, at 3 (warranty contract signed "May 20, 2018"); *id*. at 6 (first warranty repair "December 2, 2019").)

The amended complaint names four varieties of tolling to save this claim—class-action tolling, discovery-rule tolling, the repair doctrine, and fraudulent concealment. (ECF 9, at 5–9.) But plaintiffs never responded to Ford's argument that these doctrines are inapplicable. (*See* ECF 10-1, at 22; *see generally* ECF 12.) Thus, they have waived any tolling. *See Sarkesian v. Ford Motor Co*., No. 22-cv-00966-AJB-MDD, 2022 WL 20033381, at *3–4 (S.D. Cal. Nov. 1, 2022) (dismissing complaint and holding that plaintiffs waived "class action tolling," "equitable tolling," and "the repair doctrine" when they failed to address the defense's arguments in opposition).

Plaintiffs' last resort then is relying on a latent defect to prove a breach of the implied warranty. A latent defect that was "undiscoverable at the time of sale" violates the implied warranty of merchantability even when it is first detected "years after a sale." *Mexia v. Rinker Boat Co*., 174 Cal. App. 4th 1297, 1304–05 (2009). But plaintiffs' only allegation on this score is plainly inadequate: "At the time of entering into the warranty contract, or within one-year thereafter, the Vehicle contained or developed the defects . . . ." (ECF 9, at 12.) This conclusory allegation is insufficient to establish a latent defect. *See Iqbal*, 556 U.S. at 678 (holding that a complaint is deficient "if it tenders naked assertions devoid of further factual enhancement" (cleaned up)); *see also Fitzpatrick*, 2022 WL 17037498, at *10 (dismissing implied-warranty claim and finding latent-defect allegation insufficient when plaintiff alleged that at "the time of entering into the warranty contract, or within one-year thereafter, the Vehicle contained or developed the defects").

In short, plaintiffs have not alleged any active defect within a year of purchase, nor any latent defect at the time of sale, nor any tolling basis. Claim 4 must be dismissed.

**D.   The Sale**

Ford moves to dismiss all claims on the ground that plaintiffs never "allege a sale of their Focus." (ECF 10-1, at 17.) Ford expresses frustration with the vague and roundabout way plaintiffs discuss the sale. For example, rather than stating when they bought the car,

plaintiffs assert that on "about May 20, 2018, in California, Plaintiffs entered into a *warranty contract*" with Ford. (ECF 9, at 3 (emphasis added).) At another point, the amended complaint shifts to the passive voice, grammatically hiding the buyer's identity: "the sale of the Vehicle was accompanied by Defendant's implied warranty of merchantability." (*Id*. at 12.)

Yet at the motion-to-dismiss stage, the standard is mere "facial plausibility." *Iqbal*, 556 U.S. at 678. And this Court must accept "all factual allegations in the complaint as true" and construe them "in the light most favorable to the nonmoving party." *McGinity v. Procter & Gamble Company*, 69 F.4th 1093, 1096 (9th Cir. 2023). Plaintiffs clear this modest hurdle. In addition to their warranty contract with Ford, plaintiffs allege that they "interacted with sales representatives at Perry Ford of National City [California] . . . prior to purchasing the Subject Vehicle." (ECF 9, at 5.) It is *possible* that this statement means that plaintiffs "interacted with" representatives in National City but later bought the vehicle elsewhere (or that someone else later purchased it for them). But in the light most favorable to plaintiffs, they plausibly allege that they bought the vehicle from Ford in California. The sale-related allegations are imprecise, but do not justify dismissal.

**E.     Leave to Amend**

The Court has discretion to grant leave to amend a complaint a second time "when justice so requires." Fed. R. Civ. P. 15(a)(2). This discretion is guided by the strong federal policy favoring dispositions on the merits and permitting amendments with "extreme liberality." *DCD Programs Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). In deciding whether to grant such leave, courts consider five factors: (1) "undue delay," (2) "bad faith or dilatory motive on the part of the movant," (3) "repeated failure to cure deficiencies by amendments previously allowed," (4) "undue prejudice to the opposing party," and (5) "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Of these factors, undue prejudice is the "touchstone of the inquiry" and "carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "The party opposing amendment bears the burden of showing prejudice." *DCD Programs*,

833 F.2d at 187. Ford has not offered any evidence of undue prejudice, and nothing in the record suggests that a further amendment would unduly prejudice the defense.

"Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* . . . in favor of granting leave to amend." *Eminence Cap.*, 316 F.3d at 1052. One argument against such leave is that, after Ford's initial motion to dismiss, plaintiffs amended their complaint and failed to remedy many of the defects Ford correctly identified. (*See generally* ECF 1, 6, 9, 10.) In addition, Ford may see this latest amended complaint as plaintiffs' third bite at the apple, because in 2021 plaintiffs brought—and voluntarily dismissed—a very similar action against Ford in state court. (*See* ECF 10-1, at 9.) Nonetheless, the prior amendment was by stipulation of the parties. (ECF 8.) And plaintiffs never previously had the Court's input on any deficiencies with their operative complaint. Under these circumstances, the *Foman* factors tip in favor of amendment. Plaintiffs may amend the complaint once again on all claims and theories.

## CONCLUSION

Ford's motion to dismiss is **GRANTED**. By October 10, 2023, plaintiffs must file any second amended complaint.

Dated:  September 12, 2023

Andrew G. Schopler
United States District Judge